UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LAURA M. BISHOP (NAVARRO)
o/b/o K.M.B.,

                 Plaintiff,

v.                                    1:16-CV-1190
                                    (GTS)

COMMISSIONER OF SOCIAL SECURITY,

                 Defendant.
_____

APPEARANCES:                            OF COUNSEL:

LEGAL AID SOCIETY OF NORTHEASTERN NY     MICHAEL J. TELFER, ESQ.
  Counsel for Plaintiff
55 Colvin Avenue
Albany, NY 12206

U.S. SOCIAL SECURITY ADMIN.             PETER W. JEWETT, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278

GLENN T. SUDDABY, Chief United States District Judge

## <u>DECISION and ORDER</u>

Currently before the Court, in this Social Security action filed by Laura M. Bishop

("Plaintiff") on behalf of her minor daughter, K.M.B., against the Commissioner of Social

Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3),

are Plaintiff's motion for judgment on the pleadings and Defendant's motion for judgment on the

pleadings.  (Dkt. Nos. 12, 13.)  For the reasons set forth below, Plaintiff's motion for judgment

on the pleadings is granted, and Defendant's motion for judgment on the pleadings is denied.

## I. RELEVANT BACKGROUND

### A. Factual Background

K.M.B. was born in 2000, making her 12 years old at the date she filed her application and 14 years old at the date of the ALJ's decision. She was in ninth grade at the time of the ALJ's decision and was classified as an adolescent as defined in 20 C.F.R. § 416.926a(g)(2)(v). Generally, Plaintiff alleges K.M.B. is disabled due to a learning disability and mood disorder.

### B. Procedural History

Plaintiff applied for Supplemental Security Income on behalf of K.M.B. on July 26, 2013. This application was initially denied on December 9, 2013, after which she timely requested a hearing before an Administrative Law Judge ("ALJ"). Plaintiff and K.M.B. appeared at a hearing before ALJ Robert Wright on May 21, 2015. On June 16, 2015, the ALJ issued a written decision finding K.M.B. was not disabled under the Social Security Act. (T. 26-43.)[1] On August 25, 2016, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (T. 1-4.)

### C. The ALJ's Decision

Generally, in his decision, the ALJ made the following four findings of fact and conclusions of law. (T. 29-43.) First, the ALJ found that K.M.B. has not engaged in substantial gainful activity since the application filing date. (T. 29.) Second, the ALJ found that K.M.B.'s mood disorder, bipolar disorder, oppositional defiant disorder, speech and language impairment, learning disability, and obesity are severe impairments. (T. 29.) Third, the ALJ found that

---

[1]      The Administrative Transcript is found at Dkt. No. 9. Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

K.M.B.'s severe impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (Part B) (the "Listings"). (T. 29.) Specifically, the ALJ considered Listings 102.00 (special senses and speech), 111.09 (communication impairment), and 112.00 (mental disorders). (*Id.*) Fourth, the ALJ found that K.M.B. does not have an impairment or combination of impairments that functionally equals the severity of the Listings. (T. 30.) More specifically, the ALJ found that Plaintiff has a marked restriction in the domain of interacting and relating with others; less than marked restrictions in the domains of acquiring and using information, attending and completing tasks, and caring for herself; and no limitations in the domains of moving about and manipulating objects and health and physical well-being. (T. 35-43.) Because K.M.B.'s impairments do not meet, equal, or functionally equal a Listing, the ALJ found she is not disabled. (T. 43.)

### D. The Parties' Briefings on Their Cross-Motions

Generally, Plaintiff makes four arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues that the ALJ erred in finding K.M.B. did not met Listing 112.04. (Dkt. No. 12, at 9-12 [Pl. Mem. of Law].) Plaintiff argues that the medical evidence, including the opinion evidence, shows that K.M.B. meets the criteria of this listing, including marked limitations in age-appropriate personal functioning, age-appropriate social functioning, and maintaining concentration, persistence and pace. (Dkt. No. 12, at 10-12 [Pl. Mem. of Law].)

Second, Plaintiff argues that the ALJ's findings regarding the weight afforded to the various opinions are not supported by substantial evidence. (Dkt. No. 12, at 12-15 [Pl. Mem. of Law].) More specifically, Plaintiff argues that the ALJ erred in relying in part on the opinion from non-examining State Agency medical consultant Dr. Tatar because his opinion was based on review of an incomplete record and was inconsistent with the other evidence in the record.

(Dkt. No. 12, at 12-14 [Pl. Mem. of Law].)  Plaintiff also argues that the ALJ erred in failing to afford controlling weight to the opinion from treating physician Simon Udembga, Ph.D., because the ALJ erroneously relied on misrepresentations of the treatment relationship with Dr. Udembga, improperly relied on inconsistencies between Dr. Udembga's opinion and global assessment of functioning ("GAF") scores in his treatment notes, and failed to acknowledge that this opinion was supported by substantial evidence.  (Dkt. No. 12, at 14-15 [Pl. Mem. of Law].)

Third, Plaintiff argues that the credibility finding is not consistent with applicable legal standards because the ALJ did not explicitly state whether K.M.B.'s medical impairments could reasonably produce her symptoms, and he improperly relied on Plaintiff's non-compliance with medications without first considering the side effects of those medications and whether that non-compliance was in fact a product of her mental impairments. (Dkt. No. 12, at 16-17 [Pl. Mem. of Law].)

Fourth, Plaintiff argues that the ALJ's findings regarding functional equivalence are not supported by substantial evidence.  (Dkt. No. 12, at 18-25 [Pl. Mem. of Law].)  More specifically, Plaintiff argues that, based on the medical and educational evidence, the ALJ should have found an extreme limitation in the domain of interacting and relating with others, at least a marked limitation in the domain of attending and completing tasks, at least a marked limitation in the domain of acquiring and using information, and at least a marked limitation in the domain of caring for herself.  (*Id.*)  Relatedly, Plaintiff argues that the ALJ failed to reconcile his finding of less than marked limitation in the domain of caring for self with the opinion from Plaintiff's global history teacher.  (Dkt. No. 12, at 24 [Pl. Mem. of Law].)

Generally, Defendant makes three arguments in support of her motion for judgment on the pleadings.  First, in response to Plaintiff's first argument, Defendant argues that the ALJ's

finding that K.M.B. did not meet or equal a Listed impairment is supported by substantial evidence.  (Dkt. No. 13, at 7 [Def. Mem. of Law].)

Second, in response to Plaintiff's second argument, Defendant argues that the ALJ appropriately relied in part on the opinion from Dr. Tatar because the Second Circuit has recognized that State Agency physicians' opinions can constitute substantial evidence, because Dr. Tatar had the ability to review ample evidence when rendering his opinion, and because the ALJ considered the evidence submitted after that opinion when determining whether it was supported by the evidence as a whole.  (Dkt. No. 13, at 5-7 [Def. Mem. of Law].)  Defendant also argues that the ALJ appropriately declined to afford controlling weight to Dr. Udemgba's opinion because it was inconsistent with the GAF scores in Dr. Udemgba's own treatment notes and from other sources, because the evidence was contrary to his findings, and because Dr. Udemgba's treatment of K.M.B. was limited and sporadic.  (Dkt. No. 13, at 7-9 [Def. Mem. of Law].)  Defendant additionally argues that the ALJ properly relied in part on the opinion from consultative examiner Dr. Rigberg to support his findings.  (Dkt. No. 13, at 9-10 [Def. Mem. of Law].)

Third, in response to Plaintiff's fourth argument, Defendant argues that the ALJ's finding that K.M.B. did not functionally equal the listings is supported by substantial evidence.  (Dkt. No. 13, at 10-14 [Def. Mem. of Law].)

Plaintiff sought and was granted permission to file a reply brief.  (*See* Dkt. No. 15.)  First, in reply to Defendant's second response, Plaintiff argues that the evidence available at the time Dr. Tatar conducted his review was not sufficient to provide an adequate basis for his opinion because he had not been able to consider 17 months' worth of evidence.  (Dkt. No. 16, at 1-2 [Pl. Reply Br.].)  Plaintiff argues that Defendant misrepresented the content of the record that was

available to Dr. Tatar and that significant evidence from after the time Dr. Tatar conducted his review showed greater limitations. (Dkt. No. 16, at 2-6 [Pl. Reply Brief].)

Second, in reply to Defendant's second response, Plaintiff argues that Defendant engaged in *post hoc* rationalizations when arguing that the ALJ afforded appropriate weight to the opinion from Dr. Udembga, as the ALJ did not rely on the GAF scores Defendant notes from a nurse practitioner. (Dkt. No. 16, at 6 [Pl. Reply Brief].)

Lastly, Plaintiff argues that Defendant argued an erroneous standard of review and failed to respond to multiple contentions of legal error raised in Plaintiff's memorandum. (Dkt. No. 16, at 6-7 [Pl. Reply Brief].)

## II. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct.

1420, 1427 (1971).  Where evidence is deemed susceptible to more than one rational

interpretation, the Commissioner's conclusion must be upheld.  *Rutherford v. Schweiker*, 685

F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial

evidence, a reviewing court considers the whole record, examining evidence from both sides,

because an analysis of the substantiality of the evidence must also include that which detracts

from its weight."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by

substantial evidence, the Commissioner's finding must be sustained "even where substantial

evidence may support the plaintiff's position and despite that the court's independent analysis of

the evidence may differ from the [Commissioner's]."  *Rosado v. Sullivan*, 805 F. Supp. 147, 153

(S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination

considerable deference, and may not substitute "its own judgment for that of the

[Commissioner], even if it might justifiably have reached a different result upon a *de novo*

review."  *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.        Standard to Determine Disability

An individual under the age of 18 is disabled, and thus eligible for SSI benefits, if he or

she has a medically determinable physical or mental impairment, which results in marked and

severe functional limitations, and which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than 12 months.  *See* 42 U.S.C. §

1382c(a)(3)(C)(i).  However, that definitional provision excludes from coverage any "individual

under the age of [eighteen] who engages in substantial gainful activity...."  42 U.S.C. §

1382c(a)(3)(C)(ii).

By regulation, the agency has prescribed a three-step evaluative process to be employed in determining whether a child can meet the statutory definition of disability. *See* 20 C.F.R. § 416.924; *Kittles v. Barnhart*, 245 F. Supp. 2d 479, 487–88 (E.D.N.Y.2003); *Ramos v. Barnhart*, No. 02–CV–3127, 2003 WL 21032012, at *7 (S.D.N.Y. May 6, 2003).

The first step of the test, which bears some similarity to the familiar five-step analysis employed in adult disability cases, requires a determination of whether the child has engaged in substantial gainful activity. *See* 20 C.F.R. § 416.924(b); *Kittles*, 245 F. Supp. 2d at 488. If so, then both statutorily and by regulation the child is ineligible for SSI benefits. *See* 42 U.S.C. § 1382c(a)(3)(C)(ii); 20 C.F.R. § 416.924(b).

If the claimant has not engaged in substantial gainful activity, the second step of the test next requires examination of whether the child suffers from one or more medically determinable impairments that, either singly or in combination, are properly regarded as severe, in that they cause more than a minimal functional limitation. *See* 20 C.F.R. § 416.924(c); *Kittles*, 245 F. Supp. 2d at 488; *Ramos,* 2003 WL 21032012, at *7. In essence, "a child is [disabled under the Social Security Act] if his impairment is as severe as one that would prevent an adult from working." *Zebley v. Sullivan*, 493 U.S. 521, 529, 110 S.Ct. 885, 890 (1990).

If the existence of a severe impairment is discerned, the agency must then determine, at the third step, whether it meets or equals a presumptively disabling condition identified in the listing of impairments set forth under 20 C.F.R. Part 404, Subpart. P., App. 1 (the "Listings"). *Id*. Equivalence to a listing can be either medical or functional. *See* 20 C.F.R. § 416.924(d); *Kittles*, 245 F. Supp. 2d at 488; *Ramos*, 2003 WL 21032012, at *7. If an impairment is found to meet, or qualify as medically or functionally equivalent to, a listed disability and the twelve-

month durational requirement is satisfied, the claimant will be deemed disabled. *See* 20 C.F.R. § 416.924(d)(1); *Ramos*, 2003 WL 21032012, at *8.

Analysis of functionality is informed by consideration of how a claimant functions in six main areas referred to as "domains." 20 C.F.R. § 416.926a(b)(1); *Ramos*, 2003 WL 21032012, at *8. The domains are described as "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1). Those domains include: (i) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating with others; (iv) moving about and manipulating objects; (v) caring for self; and (vi) health and physical well-being. *See* 20 C.F.R. § 416.926a(b)(1).

Functional equivalence is established in the event of a finding of an "extreme" limitation, meaning "more than marked," in a single domain. 20 C.F.R. § 416.926a(a); *Ramos*, 2003 WL 21032012, at *8. An "extreme limitation" is an impairment which "interferes very seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(I). Alternatively, a finding of disability is warranted if a "marked" limitation is found in any two of the listed domains. 20 C.F.R. § 416.926a(a); *Ramos*, 2003 WL 21032012, at *8. A "marked limitation" exists when the impairment "interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). "A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with the ability to function (based upon age-appropriate expectations) independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00(C).

### III. ANALYSIS

#### A. Whether the ALJ's Finding Regarding Functional Equivalence is Supported By Substantial Evidence

After careful consideration, the Court answers this question in the negative for some of the reasons stated in Plaintiff's memorandum of law. (Dkt. No. 12, at 24 [Def. Mem. of Law].) To those reasons, the Court adds the following analysis.

As noted previously in the section outlining the standard of disability in child cases, a child claimant will be found to have impairments that functionally equal the Listings where she exhibits marked limitations in at least two of the enumerated domains of functioning, or one extreme limitation in any of the domains of functioning. *Hickman ex. rel. M.A.H. v. Astrue*, 728 F. Supp. 2d 168, 176 (N.D.N.Y. 2010) (citations omitted). The regulations defined a marked limitation as "when your impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2). An extreme limitation is defined as "when your impairment(s) interferes very seriously with your ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3).

The ALJ found that K.M.B. had a marked restriction in the domain of interacting and relating with others; less than marked restrictions in the domains of acquiring and using information, attending and completing tasks, and caring for herself; and no limitations in the domains of moving about and manipulating objects and health and physical well-being. (T. 35-43.) Plaintiff argues that the ALJ erred in failing to find an extreme limitation in interacting and relating with others and marked limitations in attending and completing tasks, acquiring and using information, and caring for self. (Dkt. No. 12, at 18-25 [Pl. Mem. of Law].) This Court will focus specifically on the domains of interacting and relating with others and caring for self,

as review of the ALJ's decision shows that the ALJ did not provide adequate explanation from which this Court can determine whether his findings related to these domains are supported by substantial evidence. This lack of explanation is material to the outcome in this case, as a finding of greater limitation in either domain would result in a finding that K.M.B. functionally equals the Listings.

### 1. Interacting and Relating With Others

In finding K.M.B. had a marked limitation in interacting and relating with others, the ALJ discussed evidence from the Individualized Education Plan ("IEP") summaries for the seventh and eighth grades, noting that the eighth grade IEP supported that K.M.B.'s social functioning deteriorated throughout that school year. (T. 39.) The ALJ afforded less than significant weight to the opinion from special education case manager Ms. Valente, who had opined no serious or very serious problems in K.M.B.'s functioning in this domain. (*Id.*) The ALJ also afforded little weight to the opinion from State Agency medical consultant Dr. Tatar, who had opined a less than marked limitation in this domain, finding it inconsistent with the more recent evidence. (T. 40.) The ALJ did find that the opinion from Plaintiff's unidentified ninth grade global studies teacher was well supported by the administrative reports that documented multiple suspensions for behavior. (T. 39-40.) The ALJ found that the teacher's opinion, along with the IEP reports and other administrative evidence, supported a finding of marked limitation in this domain. (T. 40.)

Plaintiff argues that the ALJ should have found an extreme limitation in this domain based on the medical evidence, the academic evidence, and the opinion from K.M.B.'s teacher. (Dkt. No. 12, at 18-19 [Pl. Mem. of Law].) This Court cannot say conclusively whether an extreme limitation in this domain was warranted based on the evidence in the record, but finds

that the ALJ did not provide an adequate explanation for determining that the evidence supported a marked rather than an extreme limitation.  Notably, the ALJ asserted that the opinion from K.M.B.'s teacher supported a finding of a marked limitation in this area, but failed to explain how the limitations this source opined were in fact consistent with a marked limitation.

On February 4, 2015, K.M.B.'s teacher opined that she had "a very serious problem" in her abilities to play cooperatively with other children, make and keep friends, seek attention appropriately, express anger appropriately, ask permission appropriately, follow rules, respect and obey adults in authority, use language appropriate to the situation and listener, introduce and maintain relevant and appropriate topics of conversation, and interpret the meaning of facial expressions, body language, hints, and sarcasm.  (T. 371.)  As justification for these limitations, K.M.B.'s teacher noted that she was on an abbreviated school day due to her inability to comply with school rules, that she had removals from class and suspensions, that she had continuous social problems at school, that she had threatened other students, that she had been "completely verbally inappropriate" to staff and students, and that she never took responsibility for her actions.  (*Id*.)

Given the content of the teacher's opinion, it is not clear that this opinion supports only a marked limitation as the ALJ found.  As already noted, an extreme limitation in this context is defined by the Social Security Administration as "when your impairment(s) interferes *very seriously* with your ability to independently initiate, sustain, or complete activities," and a marked limitation is "when your impairment(s) interferes *seriously* with your ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(2), (3) (emphasis added).  The severity rating language in the form completed by K.M.B.'s teacher tracks that of the regulations, with choices for "a serious problem" and "a very serious problem"

available for each listed characteristic being rated. (T. 371.) Given that the opinion form appears to apply the standards outlined in the regulation for rating a child's mental functioning, it is not unreasonable to assume that an opinion that K.M.B. had a very serious problems in many of the listed areas is equivalent to an opinion that K.M.B. had an extreme limitation in those areas. K.M.B.'s teacher opined that she had very serious problems in 10 of the 13 listed areas within the domain of interacting and relating with others. (T. 371.) If a very serious problem is indeed equivalent to an extreme limitation as the regulatory definition would appear to suggest, then the opinion from K.M.B.'s teacher more appropriately would be interpreted as supporting a finding of extreme limitation overall in this domain.

However, despite the similarities in the rating language used in both this opinion form and the regulations, the ALJ concluded without any elucidating explanation that the opinion from K.M.B.'s teacher was supportive of a marked limitation. Although this Court must accept the ALJ's reasonable interpretation of evidence, the ALJ has not provided any explanation that shows how a reasonable fact-finder could interpret this opinion as supportive of a marked, rather than an extreme, limitation in the domain of interacting and relating with others. *See Hickman*, 728 F. Supp. 2d at 173 ("The ALJ must 'build an accurate and logical bridge from the evidence to [his] conclusion to enable a meaningful review.'") (quoting *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002)).

This Court cannot say conclusively whether the overall evidence supports the ALJ's finding of a marked limitation, but, even if it does, the ALJ still provided no explanation for declining to accept the greater limitations that appear to be supported by the teacher's opinion despite declaring this opinion was well supported by the evidence. *See* SSR 06-03p, 2006 WL 2329939, at *5-6 (Aug. 9, 2006) (noting that information from "other sources," including

teachers, are "valuable sources of evidence for assessing impairment severity and functioning," and that the ALJ "generally should explain the weight given to opinions from [] 'other sources'").  Even if it is not mandatory in all cases for the ALJ to provide explanations for rejecting opinions from "other sources," the ALJ still must ensure that he has provided sufficient explanation to enable adequate review of his findings.  *Hamedallah ex rel. E.B. v. Astrue*, 876 F. Supp. 2d 133, 142 (N.D.N.Y. 2012) ("A court 'cannot . . . conduct a review that is both limited and meaningful if the ALJ does not state with sufficient clarity the legal rules being applied and the weight accorded the evidence considered.'") (quoting *Morgan on behalf of Morgan v. Chater*, 913 F. Supp. 184, 188-89 (W.D.N.Y. 1996)); *Booker v. Astrue*, No. 1:07-CV-0646, 2011 WL 3735808, at *5 (N.D.N.Y. Aug 24, 2011) ("The crucial factors in an ALJ's decision must be set forth in sufficient detail as to enable meaningful review by the court.") (citing *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984)).  Notably, this Court has previously noted that remand is warranted where the ALJ's lack of explanation for his findings prevents the Court from being able to determine whether the correct legal principles were applied.  *Gallow v. Comm'r of Soc. Sec.*, No. 5:15-CV-1017, 2016 WL 5854281, at *6 (N.D.N.Y. Sept. 13, 2016) (finding remand appropriate where "[t]his Court cannot determine whether substantial evidence supported the ALJ's RFC determination, because there is a 'reasonable basis for doubt' as to whether correct legal principles were applied; therefore, the substantial evidence standard may not be used to uphold the ALJ's decision") (citing *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 280 (N.D.N.Y. 2009)).  Because there is no indication as to the basis for the ALJ's interpretation of the opinion from K.M.B.'s teacher and no indication that the ALJ applied the appropriate factors for assessing this opinion, this Court cannot say that the ALJ's finding related to this domain is consistent with the applicable regulatory standards or supported by substantial evidence,

particularly as the ALJ explicitly declined to rely on the other opinion evidence on this specific issue.

The ALJ did broadly afford significant weight to the opinion from consultative examiner Seth Rigberg, Ph.D., but this opinion does not clearly provide substantial evidence to remedy the lack of clarity in the ALJ's specific explanation of the findings in this domain. (T. 34.) On November 20, 2013, Dr. Rigberg opined that K.M.B. had a moderate-to-marked limitation in adequately maintaining appropriate social behavior, and a mild-to-marked limitation in interacting adequately with peers and adults depending on the situation. (T. 500.) While Dr. Rigberg's somewhat vague opinion does appear to nominally support the ALJ's finding of a marked limitation in this domain, other factors suggest that Plaintiff might have had greater limitations. Notably, Dr. Rigberg conducted his examination and provided his opinion fairly early in the period at issue in the ALJ's decision, and, as the ALJ himself noted when discussing the December 6, 2013, opinion from State Agency medical consultant Dr. Tatar, evidence from later in the relevant period showed that K.M.B.'s ability to interact and relate with others had deteriorated since that time. (T. 40.) If the ALJ acknowledges that K.M.B.'s social functioning had objectively worsened since the time Dr. Tatar conducted his review of the record (a record that contained Dr. Rigberg's opinion), the ALJ must also logically accept that K.M.B.'s functioning had worsened since Dr. Rigberg had examined her and rendered his opinion. Consequently, Dr. Rigberg's already somewhat vague opinion is also of questionable accuracy for determining Plaintiff's functioning over the entire period at issue, and therefore does not stand as substantial evidence which would remedy the ALJ's failure to provide adequate explanation for his finding in this domain.

Based on all of the above, this Court is unable to determine whether the ALJ's finding of a marked limitation in this domain is supported by substantial evidence due to the ALJ's lack of explanation related to his interpretation of the opinion from K.M.B.'s teacher. Remand is therefore warranted on this basis.

### 2. Caring for Self

In finding that K.M.B. had a less than marked limitation in the domain of caring for self, the ALJ noted that, while special education case manager Ms. Valente found no limitation in this domain, K.M.B.'s teacher found multiple serious and very serious problems. (T. 42.) The ALJ noted that comments similar to those included in the teacher's opinion form were present in the proposed tenth grade IEP, that K.M.B. had been suspended for using poor judgment in leaving school grounds without permission, that medical records showed self-harming behaviors and occasional reports of suicidal ideation as well as notations that K.M.B. did not cooperate or use good judgment in taking her medications, and that treating physician Dr. Udemgba noted that K.M.B. often refused to participate in her mental health counseling. (T. 42.)

Plaintiff argues that the ALJ should have found a marked limitation in this domain based on the academic records, the medical evidence, and the opinion from K.M.B.'s teacher. (Dkt. No. 12, at 23-25 [Pl. Mem. of Law].) More specifically, Plaintiff argues that the ALJ noted the teacher's opinion in detail, but "failed to reconcile it with his findings of 'less than marked limitation' in this domain." (Dkt. No. 12, at 24 [Pl. Mem. of Law].) Much as with the domain for interacting and relating with others, this Court cannot say that the evidence in the record as a whole definitively and clearly supports at least a marked limitation, but the ALJ failed to provide the requisite explanation to enable review of whether his finding in the domain of caring for self was supported by substantial evidence.

K.M.B.'s teacher opined that she had a very serious problem in the areas of handling frustration appropriately, being patient when necessary, identifying and appropriately asserting emotional needs, responding appropriately to changes in own mood, using appropriate coping skills to meet daily demands of the school environment, and knowing when to ask for help. (T. 373.) The teacher also opined that K.M.B. had a serious problem in her ability to use good judgment regarding personal safety and dangerous circumstances. (*Id.*) He noted that K.M.B. did not think before acting, did not care about the consequences of her actions, that she acted however she wanted during direct instruction, and that she was very distracting to herself and her peers. (*Id.*)

As with the domain of interacting and relating with others, it is not clear that this opinion supports the ALJ's finding of a less than marked limitation in the domain of caring for self. K.M.B.'s teacher opined six of the ten listed areas within this domain were a very serious problem and one was a serious problem. (T. 373.) As already discussed, the regulations seem to indicate that these very serious problems would be equivalent to extreme limitations while serious problems would be equivalent to marked limitations. 20 C.F.R. § 416.926a(e)(2), (3). Consequently, the opinion from K.M.B.'s teacher appears to suggest at least a marked limitation in this domain overall. Yet, as Plaintiff argues, the ALJ does not provide any explanation as to how he weighed this opinion or the extent to which he relied on it when making his determination related to this domain. (T. 42.) Nor does his discussion within the section related to this domain provide a clear explanation as to what contrary evidence the ALJ relied on. Other than noting that case manager Ms. Valente opined no limitation in this domain, all the rest of the evidence the ALJ cited in this discussion substantiates fairly significant limitations and does not

clearly lead to a logical conclusion that K.M.B. had a less than marked limitation in this domain. (*Id.*)

Nor does the evidence discussed throughout the rest of the ALJ's decision provide an explanation as to the basis of his finding that K.M.B. had a less than marked limitation in this domain. In his more general discussion of the evidence, the ALJ does cite to evidence that is more supportive of his findings, such as that Plaintiff's mood symptoms improved when she was compliant with her medications and that she was noted by therapist Vera Imperiale as having intact insight and judgment, but these isolated findings do not persuasively provide the requisite explanation to show that the ALJ's findings related to K.M.B.'s ability to care for herself were supported by substantial evidence. (T. 31-33.) Additionally, the ALJ's focus on Plaintiff's sometimes willful non-compliance with psychiatric medications and treatment as a factor detracting from the alleged severity of her mental impairment ignores the fact that a refusal to take her medication despite knowing it helped her symptoms could reasonably support a fairly significant deficit in K.M.B.'s self-care abilities. The regulations note that the domain of caring for self includes "whether you can take care of your own health," displaying "consistent judgment about the consequences" of self-care, having a basic understanding of physical and emotional needs, and "following recommended treatment, taking medication as prescribed, [] [and] making decisions that do not endanger yourself." 20 C.F.R. § 416.926a(k)(1)(i)-(iv). Rather than cursorily asserting that K.M.B.'s mother should have ensured K.M.B. adhered to her treatment and medication, he should have assessed whether K.M.B.'s refusal to follow treatment was indicative of self-care skills that were below the expected standard for her age. After all, whether or not a parent forces a child to take medication or attend other treatment provides very little evidence about that child's ability to *independently* seek and comply with treatment as part

of good judgment regarding self-care, and that independent ability is what is at issue when rating whether a child claimant is limited in caring for herself. 20 C.F.R. § 416.926a(k)(1)(i)-(iv). Consequently, the ALJ's more general discussion of the evidence does not provide the explanation necessary to support his finding that K.M.B. had a less than marked limitation in the domain of caring for self.

Plaintiff cites to *Leonard ex. rel. A.J. v. Astrue*, No. 09-CV-029, 2011 WL 7090710 (N.D.N.Y. Nov. 3, 2011), report and recommendation adopted by 2012 WL 209145 (N.D.N.Y. Jan 24, 2012), which this Court finds instructive. (Dkt. No. 12, at 24 [Pl. Mem. of Law].) In *Leonard*, this Court concluded that the ALJ's finding regarding functional equivalence was not supported by substantial evidence in part because the ALJ made no effort to reconcile findings from a teacher that the claimant had multiple very serious limitations with the ALJ's finding that the claimant had only a less than marked limitation in the relevant domain of attending and completing tasks. *Leonard*, 2011 WL 7090710, at *7-8. The Court also noted that, in relation to the domain of caring for self, the ALJ discussed the teachers' findings, but "does not appear to have accounted for the structured setting [the claimant required] and made no meaningful attempt to reconcile his finding with the significant limitations assessed by Claimant's teachers." *Leonard*, 2011 WL 7090710, at *11. Plaintiff is correct that the ALJ in this case similarly failed to make an effort to reconcile the finding of multiple very serious limitations by K.M.B.'s teacher with his finding of a less than marked limitation in this domain and thus committed harmful error preventing adequate review of the ALJ's findings. However, unlike *Leonard*, the Court cannot definitively and with complete confidence conclude that the evidence of record as a whole so clearly demonstrates that Plaintiff had a marked limitation in this domain (or an extreme limitation in the domain of interacting and relating with others) such that remand would

serve no useful purpose. *Leonard*, 2011 WL 7090710, at *12 (quoting *Butts v. Barnhart*, 388

F.3d 377, 385-86 (2d Cir. 2004) (citation omitted); *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir.

1987); *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980)). Rather, remand is the best course of

action in order for the ALJ to provide specific explanations regarding the support for his

interpretation of the teacher's opinion and his degree of reliance on that opinion when assessing

functional equivalence.

Defendant does not provide any persuasive arguments as to why the ALJ's finding in this

domain is supported by substantial evidence, as she merely lists some of the same evidence the

ALJ noted within his discussion of this domain and does not address Plaintiff's argument

regarding the ALJ's failure to provide an adequate explanation as to why he did not accept the

full extent of limitations opined by K.M.B.'s teacher. (Dkt. No. 13, at 12-13 [Def. Mem. of

Law].)

Based on the above, this Court is again unable to determine whether the ALJ's finding of

a less than marked limitation in this domain is supported by substantial evidence due to the

ALJ's lack of explanation related to the extent of his reliance on the opinion from K.M.B.'s

teacher. Remand is therefore warranted on this basis.

## B. Plaintiff's Remaining Arguments

Given the potentially determinative nature of the errors in explaining the interpretation of

and reliance on the opinion from K.M.B.'s teacher when assessing functional equivalence in the

above-discussed domains that merit remand, discussion by this Court of the rest of Plaintiff's

alleged errors is not necessary, particularly as reconsideration of the teacher's opinion on remand

in accordance with this Decision and Order could reasonably impact the ALJ's findings

regarding credibility and the weight to which the other opinion evidence was entitled. The ALJ

should indeed conduct a new assessment of all these issues on remand while further considering and explaining the extent of his reliance on the teacher's opinion when determining functional equivalence.

   **ACCORDINGLY**, it is

   **ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 12) is **<u>GRANTED</u>**; and it is further

   **ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 13) is **<u>DENIED</u>**; and it is further

   **ORDERED** that this matter be **<u>REMANDED</u>** for further administrative proceedings consistent with this Decision and Order pursuant to Sentence Four of 42 U.S.C. 405(g).

Dated: October 10, 2017
   Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge